IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                       *

ACIE LYONS,                     *

      Plaintiff,           *

         v.               *     CIVIL NO.: WDQ-08-2532

ERIC K. SHINSEKI,         *
SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS          *

      Defendant.           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

CORRECTED MEMORANDUM OPINION[1]

Acie Lyons sued the Secretary of the United States Department of Veterans Affairs,[2] for disability discrimination and related claims. For the following reasons, the Defendant's motion for summary judgment will be granted.

I. Background[3]

Beginning in 1997, Lyons worked for the Department of Veterans Affairs ("VA") as a sewing machine operator at the

---

[1] The Memorandum Opinion is corrected to reflect that the Defendant filed his motion for summary judgment on July 16, 2010, not July 16, 2007.

[2] Lyons initially sued Dr. James B. Peake in his official capacity as "head of the Department of Veterans Affairs." Compl. ¶ 4. Shinseki, the Secretary of the Department of Veterans Affairs, will be substituted as the appropriate named defendant. *See* Fed. R. Civ. P. 25 (d).

[3] On summary judgment, Lyons's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Greene Street VA Medical Center ("Greene Street") in Baltimore,
MD. Acie Lyons Dep. 26:18-20, 28:14-18, Nov. 30, 2009. His
duties included sewing, alterations, and uniform distribution.
Def.'s Mot. Summ. J., Ex. 3 at 5:7-9. Lyons's position was
within the VA's Environmental Management Services ("EMS"), and
he was supervised by James Tillage. Lyons Dep. 36:22. Jerry
Diggs was chief of EMS for the VA Maryland Health Care System,
and Tillage's supervisor. Jerry Diggs Dep. 11:12-17, Dec. 2,
2009.

In 2001, Lyons filed a union grievance seeking a desk audit
of his position, claiming that he was not paid for work
performed above his pay grade, including computer work and
significant alterations. Lyons Dep. 59:8-60:5. The grievance
was successful and Lyons was awarded between $6,000 and $7,000
for uncompensated work. *Id*. 62:7-10. In 2002, Lyons filed a
second successful grievance when his supervisors requested that
he clean sewing machine "operating rooms" and perform other
tasks that were not part of his duties. Lyons Dep. 62:24-63:2.
"[E]very-thing went downhill" between Lyons and Diggs after
Lyons filed the grievances; the two previously had a "good
relationship." Lyons Dep: 112:24-113:5.

In fall 2003, Diggs moved his office and staff from the
Loch Raven Boulevard VA Center ("Loch Raven") in Baltimore to
the space Lyons occupied at Greene Street. Lyons Dep. 28:16-22;

Diggs Dep. 98:1-99:4.[4]  As a result, Lyons was reassigned to work in the linen room at Loch Raven.  Diggs Dep. 100:18-19.  His job title remained sewing machine operator, but his changed duties included "getting . . . soiled linen and loading the vending trucks" and "putting clean linen on each ward and . . . taking linen out."  Lyons Dep. 29:23-30:4; Diggs Dep. 72:2-6.

Diggs allowed Lyons to keep the title of sewing machine operator, but "rewrote [his] job description . . . to incorporate . . . linen distribution . . . because [he] didn't want [Lyons] to lose any money" after the transfer.  Diggs Dep. 99:15-100:15.  Lyons's new placement and duties "assist[ed] EMS [in] maximizing the available man hours and production services," as more vendors offered alteration services, and the need for internal seamstress work had declined.  ECF No. 11, Ex. 9-B2 at 29:9-14; Diggs Dep. 98:14-18; Gerrard Slowe Dep. 152:20-153:21, 161:20-162:13, Dec. 29, 2009.

At a meeting to discuss the move, Lyons told Diggs and Skip Yonkers, a union representative, that he had a disability. Diggs Dep. 147:2-13, 151:15-20.  Diggs contacted Carol Thomas, an EEO manager, who provided Diggs the forms Lyons would need to

---

[4]   Diggs relocated his office because Loch Raven had "[in]adequate space for support services for nursing" and "the clinical function needed [his office] space to support the patients there."  Diggs Dep. 106:10-18.  At Greene Street, Lyons occupied a large "employees' uniform room" that was converted into four offices to accommodate Diggs and his staff.  *Id.* 109:14-110:1.  Diggs investigated potential office locations for "six months to a year" before deciding to move to Greene Street. *Id.* 113:15.

document his disability and request accomodations. *Id.* 147:21-148:14. Diggs had Yonkers give Lyons the forms, but "[a] month went by" and Lyons "never said how he wanted to be accommodated" or "identified what his disability . . . was;"[5] instead, he said he could perform the required duties at the Loch Raven placement. *Id.* 148:15-149:1-2; 155:3-5.[6]

On September 9, 2003, two weeks after he was transferred to Loch Raven, Lyons injured his lower back and left leg. *Id.* 30:10-13; ECF No. 11, Ex. 1 at 7. As Lyons was bending to pick up a 65-75 pound bag of soiled linens, he felt "sharp pain shooting like spasms." Def's Mot. Summ. J., Ex. 3 at 30:16-31:10. Ernie Jones, a supervisor at Loch Raven, advised Lyons to see one of the facility's doctors. *Id.* at 31:23-32:11. The doctor told Lyons that he had pulled muscles in his back, gave him pain relievers, and "put [him] off work for three days." *Id.* 32:15-17. Lyons was also examined by Dr. Mark Wilson, his personal physician. *Id.* 32:21-33:1. Dr. Wilson told Lyons that he had strained his back and prescribed Motrin and Flexeril. *Id.* 33:16-22.

A few days after he was injured, Lyons applied for workers' compensation benefits with the Department of Labor, Office of

---

[5] Lyons states that he has a weak right arm and post traumatic stress disorder. Lyons Dep. 14:25, 15:22-23. He has provided no medical evidence of these conditions.

[6] Lyons also filed a union grievance about the reassignment, but was unsuccessful. Lyons Dep. 64:3-8. He was "told to report to Loch Raven," or lose his pay grade. *Id.*

Workers' Compensation Programs ("OWCP"). Def.'s Mot. Summ. J., Ex. 5. Pending resolution of his claim, Lyons was given a "light duty" assignment at Loch Raven, which required that he "wip[e] down handrails in the hallways . . . wip[e] off desktops and sinks and mirrors" and perform other "light janitorial" tasks. Lyons Dep. 36:3-8; Def's Mot. Summ. J., Ex 3 at 34:19-35:3; Def.'s Mot. Summ. J., Ex. 5 at ¶ 2a.

On November 7, 2003, OWCP denied Lyons's workers' compensation claim stating that his evidence showed "that the claimed event occurred" but "no medical evidence . . . provide[d] a diagnosis which could be connected to the event." Def.'s Mot. Summ. J., Ex. 4. In December 2003, Tillage told Lyons that because his claim had been denied, Lyons needed "to come back to full duty . . . or go home." Lyons Dep. 36:25-27:4. Lyons states that he asked Tillage for "reasonable accommodation so that [he could] stay," but Tillage denied the request because "his boss . . . was telling him not to do it." *Id.* 103:5-14.

Lyons did not report to work; instead, he took sick leave from December 4, 2003 through January 9, 2004. Defs.' Mot. Summ. J., Ex. 5 at 5. He then took annual leave until February 25, 2004, when his status was changed to leave without pay ("AWOL"). *Id.* at 5-6. During this time, Lyons appealed the denial of his workers' compensation claim. *Id.* at 2. OWCP

reversed the claim denial on August 24, 2004.  *Id.*[7]  In 2004,
Lyons also filed an Equal Employment Opportunity Commission
("EEOC") complaint, alleging that the transfer to Loch Raven was
discriminatory.  Def's Mot. Summ. J., Ex. 3.[8]

On October 4, 2004, Lyons returned to work.  *Id.* at 5-9;
Lyons Dep. 37:9-10.  Because of his injury and ongoing workers'
compensation, he was again placed on light duty.  His placement
was coordinated through the workers' compensation program
office.  Linda Greenawalt Dep. 48, Dec. 2, 2009.  Linda
Greenawalt was a workers' compensation program manager within
that office, and worked on Lyons's placement.  *Id.* 11.

Greenawalt first placed Lyons at the Perry Point VA Medical
Center in Cecil County, Maryland, where he folded laundry.
Lyons Dep. 40:14-22, 41:1; Greenawalt Dep. 95.  Because Lyons
felt the commute to Perry Point was too far, Greenawalt
transferred him back to Greene Street in November 2004, where he
remained for several months.  Lyons Dep. 42:4-11; Greenawalt
Dep. 48.  His light duty assignment at Greene Street was in the
hypertension and endocrine unit ("HEU").  Lyons Dep. 42:13-15.
In the HEU Lyons performed various tasks, including greeting

---

[7]  Lyons was paid $14,565.64 in lost wages for the time he was
placed on leave without pay.  Defs.' Mot. Summ. J., Ex. 5 at 3.

[8]  On August 26, 2005, the complaint was denied by administrative
judge Laurence Gallagher because the medical evidence of a
disability was "very ambiguous, very unclear, and rather scant,"
and the VA's non-discriminatory reason for the transfer was
legitimate.  Def's Mot. Summ. J., Ex. 3 at 6, 15.

patients, providing food vouchers, and reminding patients about appointments.  Greenawalt Dep. 59; Lyons Dep. 42:13-15.[9]

It was the policy of Greenawalt's office to move injured workers off temporary light duty, and into a new permanent placement, when they "ha[d] been on light duty for over a year." Greenawalt Dep. 57.  Accordingly, about a year after Lyons was injured at Loch Raven, Greenawalt "began working . . . to find a permanent placement for him." *Id.* 63-64.  She "issued a letter to [Lyons], letting him know about [the] permanent placement policy" and asking him to provide an updated resume.  *Id.* 64. Although his supervisors at the HEU liked Lyons, he could not be permanently placed there because "the [VA] told [Greenawalt], that it was not a VA funded [position].  It wasn't on the org chart." *Id.* 64, 67-68.

On February 1, 2005, at OWCP's direction, Lyons was examined by Dr. Hanley, who determined that he was "malingering and fabricat[ing]" his injuries.  Greenawalt Dep. 100; Def.'s Mot. Summ. J., Ex. 5 at ¶ 2r.[10]  On April 8, 2005, OWCP sent a

---

[9]  Lyons did not assume a formal position at Perry Point or in the HEU, rather he was given various "light duty task[s]" in accordance with the VA's light duty policy.  Greenawalt Dep. 95.

[10]  Dr. Hanley's medical report explained that Lyons claimed his left leg was injured but, when asked to walk with a cane, "he us[ed] it to support the right leg, which was the leg that had no pain."  Greenawalt Dep. 99.  Neither party has provided a copy of Dr. Hanley's report.  However, the Defendant and Lyons agree that it concluded he had falsified his injury.  *See* Def.'s Mot. Summ. J. 6; Pl.'s Reply 4.

letter to Lyons proposing the termination of his workers'
compensation benefits. Def.'s Mot. Summ. J., Ex. 5 at ¶ 2r.
The letter stated that the proposed termination was based on Dr.
Hanley's examination, and informed Lyons that he had 30 days to
submit additional evidence supporting his claim. *Id.* Lyons
submitted medical statements from three physicians. *Id.* at ¶
2s.[11]

On May 18, 2005, OWCP terminated Lyons workers'
compensation benefits. *Id.* at ¶ 2t. Greenawalt wrote to Diggs
that "[b]ased on the termination . . . [Lyons's] light duty
assignment due to job injury is no longer appropriate . . .
[Lyons] should be returned to his regular position duties."
Def.'s Mot. Summ. J., Ex. 7. In June 2005, Tillage told Lyons
that because his workers' compensation had been terminated, he
would have to "report to full duty" or "go home." Lyons Dep.
43:15-20. Lyons states that when he asked Tillage for "a
reasonable accommodation so that [he] could go back to [his]
position as sewing machine operator," Tillage said Diggs would
not allow it. *Id.* 44:2-4, 45:10-22.

Lyons did not "say specifically" what accommodations he
needed; he "just asked [Tillage] for accommodations." ECF No.
14, Ex. 1 at 267:2-6. Tillage does not recall Lyons asking for
accommodations and states that such a request "would have [gone]

---

[11]  Lyons has not provided copies of the medical statements he
submitted.

through [Diggs]." James Tillage Dep. 28:15-19, March 4, 2010.

According to Diggs, "[t]he reasonable accommodation . . . never

came up . . . since [the meeting with Yonkers] . . . I never

heard reasonable accommodation ever pop back up. No one said

anything to me that [Lyons] is saying 'Now I want to be

reasonably accommodated.'" Diggs Dep. 210:6-11. [12]

    After OWCP terminated Lyons's workers' compensation claim,

Tillage allowed him to take two weeks annual leave. Lyons Dep.

46:8-13. Following his annual leave, Lyons was again AWOL.

Def.'s Mot. Summ. J., Ex. 5 at 9. On March 16, 2006, Tillage

wrote to Lyons that he was "required to report for full duty on

April 3, 2006, or the next appropriate action w[ould] be taken."

Def.'s Mot. Summ. J., Ex. 5 at 11. Lyons did not report to

work. ECF No. 11, Ex. 1 at 7.

    In a May 5, 2006 letter, Diggs proposed that Lyons be

removed from his job. ECF No. 11, Ex. 5. Diggs states that he

proposed the removal "based on [Lyons's] inability to perform

his duties as a seamstress, because he had not [performed his

duties] for at least. . . a year [or] two." Diggs Dep. 218:5-

---

[12] The Defendants have offered a June 27, 2005 letter from one
of Lyons's physicians, Dr. Jamal Mikdashi, MD, stating that
Lyons's on the job injury "resulted in a pinched nerve" and
exacerbated his "pre-existing inflammatory arthritis," requiring
"routine treatment." ECF No. 11, Ex. 9-C6. Lyons offered no
additional evidence documenting his medical conditions.

12.[13]   The letter stated that the removal had been proposed
because Lyons "ha[d] been unable to maintain a regular work
schedule[] since June 10, 2005" or "to perform the duties of a
Sewing Machine Operator."  ECF No. 11, Ex. 5 at 2.  It also
informed Lyons of his right to oppose the termination within 14
days.  *Id.* at 1.

On August 1, 2006, the VA terminated Lyons.  ECF No. 11,
Ex. 1 at 3.  On August 25, 2007, Lyons appealed the termination
to the Merit Systems Protection Board ("MSPB"), arguing it was
discriminatory.  *Id.*  On December 21, 2007, administrative judge
Wilhelmina D. Stevenson affirmed the termination because Lyons
"ha[d] been absent for an extended period of time" and he had
not shown that his termination was discriminatory.  *Id.* at 8-12.
On May 28, 2008, a full MSPB panel affirmed Stevenson's
decision.  ECF No. 11, Ex. 2.  On August 27, 2009, the EEOC
affirmed the MSPB.  Compl. ¶ 2.

On September 29, 2008, Lyons filed this suit, alleging a
hostile work environment, disability discrimination,
retaliation, actual and constructive discharge, and failure to
accommodate under the Rehabilitation Act of 1973.  ECF No. 1.
On August 10, 2009, this Court dismissed the constructive
discharge claim.  ECF No. 22.  On July 16, 2010, the Defendant
moved for summary judgment on the remaining claims.  ECF No. 37.

_____

[13]  Diggs has proposed the removal of other employees for "not
coming to work, DWI, disrespectful conduct," being AWOL, and
other situations "like that."  Diggs Dep. 223:1-8.

## II.  Analysis

### A.  Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

### B.  Disability Discrimination Claim

The Rehabilitation Act of 1973 governs claims of disability discrimination by employees of the federal government.  29

U.S.C. § 701, *et seq.*[14]   It prohibits discrimination against "a qualified individual with a disability in regard to job application procedures, . . . hiring, advancement or discharge, . . . compensation, job training, and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112, and requires "the government[to] take affirmative steps to accommodate the handicapped, except whe[n] undue hardship would result," *Nanette v. Snow,* 343 F. Supp. 2d 465, 472 (D. Md. 2004) (*citing* 29 C.F.R. § 1614.203).

In the absence of direct evidence of discrimination, a Rehabilitation Act plaintiff may use the *McDonnell Douglass*[15] burden-shifting framework. *Perry v. Computer Sci. Corp.,* 2010 WL 3784900, at *4 (E.D. Va. Sept. 21, 2010); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 57-58 (4th Cir. 1995). First, Lyons must show a *prima facie* disability discrimination case. *Perry,* 2010 WL 3784900 at *4. He must demonstrate that: (1) he is a "disabled" individual, who is (2) "otherwise qualified" for his position; and (3) he was removed from his position because of his "disability." *Davis v. Thompson,* 367 F. Supp. 2d 792, 801 (D. Md. 2005).

If Lyons shows a *prima facie* case, the burden shifts to the Defendant to offer a legitimate, non-discriminatory reason for

---

[14]   The standards applicable to Title I of the Americans with Disabilities Act govern complaints of employment discrimination under the Rehabilitation Act. 29 U.S.C. § 794(d).

[15]   *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

his termination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). The Defendant's burden is "one of production, not persuasion; it can involve no credibility assessment." *Id.* (internal quotation marks omitted). If the Defendant meets its burden, Lyons must then "adduce evidence from which it could be concluded by a preponderance of the evidence that the [Defendant's] reasons were merely pretextual." *Davis,* 367 F. Supp. at 801 (*citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)).

### 1. *Prima Facie* Case

The Defendant argues that Lyons has not shown a *prima facie* case for disability discrimination because a reasonable fact finder could not conclude that he is "disabled" within the meaning of the Rehabilitation Act. Def.'s Mot. Summ. J. 7-10. To show that he is "disabled" under the Act, Lyons must demonstrate that he is actually disabled, or perceived as such, which requires that he show: (1) a physical or mental impairment that substantially limits a major life activity, (2) a record of that impairment, or (3) that he is regarded as having such an impairment. *Rohan v. Networks Presentation, LLC,* 375 F.3d 266, 273 (4th Cir. 2004).

### a. Actual Disability

A person is actually disabled if he suffers from "an impairment that substantially limits one or more major life activity." 42 U.S.C. § 12102(1); *Toyota Motor Mfg. v. Williams,*

534 U.S. 184, 197 (2002).  "The terms 'substantially' and 'major' [are] interpreted strictly to create a demanding standard for qualifying as disabled."  *Toyota,* 534 U.S. at 197.[16] Accordingly, only limitations which restrict major life activities to a "considerable or . . . large degree" are "substantial."  *Heiko v. Colombo Sav. Bank,* 434 F.3d 249, 256 (4th Cir. 2006).

In deciding whether a limitation is "substantial," courts consider the nature, severity, and duration of the impairment. *Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 467-68 (4th Cir. 2008).  When the major life activity at issue is working, "the inability to perform a single, particular job does not constitute a substantial limitation; in this circumstance substantially limits means significantly restrict[s] . . . the ability to perform either a class of jobs or a broad range of jobs in various classes."  *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir. 1996)(internal quotation marks omitted).

Lyons has not shown a genuine dispute about whether he has "an impairment that substantially limits major life activities." *Toyota,* 534 U.S. at 197.  The Defendant has presented evidence

---

[16]    Although Congress overruled *Toyota* in the ADA Amendments Act of 2008, the amendments do not apply retroactively.  *See, e.g., Schneider v. Giant, LLC,* 389 Fed. Appx. 263, 267 (4th Cir. 2010) ("The ADA was amended effective January 1, 2009, after this suit was filed . . . Congress did not expressly intend for these changes to apply retroactively, and so we must decide this appeal based on the law in place prior to the amendments.").

that Lyons's injuries only prevented him from lifting more than 20-25 pounds and, for a brief time, from sitting continuously for more than four hours.[17] These limitations are insufficient to show a disability within the Rehabilitation Act.[18] Other than those limitations, Lyons has produced no evidence that he could not work full-time.

   b. Regarded as Disabled

  Lyons is "regarded as" disabled if his employer "mistakenly believes than an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 489 (1999). "To support a claim that an employee is 'regarded as' substantially limited in the major life activity of working, the employee must show that the employer viewed him as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *EEOC v. Rite Aid*

---

[17] ECF No. 11, Ex. 9-C4 at 3-9. During the month after his injury at Loch Raven, Lyons was restricted from sitting continually for four hours. *Id.* at 6.

[18] *Taylor v. Fed. Express Corp.,* 429 F.3d 461, 461-65 (4th Cir. 2005)(affirming summary judgment against employee with "restricted sitting and standing tolerances" who could not lift over 30 pounds because "a reasonable jury could not find that his impairment substantially limits his ability to work"); *Channel Master,* 101 F.3d at 490("we hold, as a matter of law, that a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity.").

*Corp.,* 2010 WL 4595842, at *4 (D. Md. Nov. 10, 2010) (*quoting* 29 C.F.R. § 1630.2 (j)(3)(i)).

Diggs's May 5, 2006 letter stated that Lyons's "recent medical documentation indicate[d] that [he was] unable to perform the duties as a Sewing Machine Operator." ECF No. 11, Ex. 5 at 2. Diggs also stated in his deposition that Lyons had an "inability to perform his job as a seamstress." Diggs Dep. 218:13-14. Taken in the light most favorable to Lyons, these statements indicate that Diggs viewed Lyons as restricted in his physical ability to work as a sewing machine operator. However, that Diggs "regarded [Lyons] as unable to perform 'the specific role for which []he was hired' is . . . insufficient to establish a disability." *Rohan,* 375 F.3d at 277 n. 19 (*quoting Sutton,* 527 U.S. at 492).

Lyons has not shown evidence from which a reasonable jury could conclude that his employer regarded him as "significantly restricted in the ability to perform . . . a class of jobs or a broad range of jobs." *Rite Aid Corp.,* 2010 WL 4595842 at *4. Thus, he has not shown that he is disabled under the Rehabilitation Act, and fails to make out a *prima facie* case for disability discrimination. The Defendant will be granted summary judgment on this claim.[19]

---

[19] The Defendant will also be granted summary judgment on Lyons's actual termination claim, which alleges that he "suffers from a disability" which resulted in removal from his position. Compl. ¶¶ 151 & 165.

C.   Failure to Accommodate

To sustain a failure to accommodate claim, Lyons must show
that: (1) he is a disabled and qualified employee, (2) he
reported his disability to his employer, (3) he requested
reasonable accommodations, and (4) the employer denied his
request.  *Rhoads v. FDIC,* 257 F.3d 373, 387 n. 11 (4th Cir.
2001).  Only employees who are actually disabled may challenge a
failure to accommodate.  *Bateman v. Am. Airlines, Inc.,* 614 F.
Supp. 2d 660, 672-73 (E.D. Va. 2009).  "[E]mployers have no duty
to offer a reasonable accommodation to employees who are [not
disabled] or [who are] merely regarded as disabled."  *Id.*  As
discussed above, Lyons has not shown that a reasonable fact
finder could conclude that he has an actual disability.  The
Defendant will be granted summary judgment on his failure to
accommodate claim.

D.   Retaliation

To show a *prima facie* case of retaliation, Lyons must
demonstrate that: (1) he engaged in a protected activity, (2)
his employer took a materially adverse action against him, and
(3) there is a causal connection between the protected activity
and the adverse action.  *Holland v. Washington Homes, Inc.,* 487
F.3d 208, 218 (4th Cir. 2007).[20]

---

[20]   If Lyons meets his burden, the Defendant may produce evidence
of a legitimate non-discriminatory reason for the action, and
Lyons must then show that the Defendant's reasons are a pretext.

Lyons contends that he engaged in protected activities when he (1) requested accommodations, (2) obtained the desk audit, and (3) filed his EEOC complaint. Pl.'s Opp'n 3, 32. He argues that his transfer to Loch Raven, removal from the light duty HEU assignment, and termination from the VA were retaliation for those activities. *Id.* 3-7, 31-32. The Defendant argues that Lyons has shown no evidence of a nexus between those activities and the VA's actions. Def.'s Mot. Summ. J. 15. To satisfy the third element of the *prima facie* retaliation case "the employer must have taken the adverse employment action *because* the plaintiff engaged in protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 635, 657 (4th Cir. 1998)(emphasis in original).

### 1.    Transfer to Loch Raven

There is no genuine dispute that Lyons's 2004 EEOC complaint and alleged requests for accommodations occurred *after* the 2003 transfer to Loch Raven was proposed; thus, he cannot show that he was transferred "because" of those activities. *Dowe,* 145 F.3d at 657. Lyons has also argued that the transfer was retaliation for the successful 2001 desk audit. The Rehabilitation Act prohibits federal agencies from discriminating based on disability. *Figueroa v. Geithner,* 711 F. Supp. 2d 562, 569 (D. Md. 2010). The Act "prohibits

---

*Holland,* 487 F.3d at 218; *Linzer v. Sebelius,* 2009 WL 2778269, at *5 (D. Md. Aug. 28, 2009).

discrimination against any individual 'because such individual has opposed any act or practice made unlawful by th[e] Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under th[e] Act.'" *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.,* 595 F.3d 1126, 1132 (10th Cir. 2010) (*quoting* 42 U.S.C. § 12203 (a)).[21] The desk audit challenged the VA's failure to pay Lyons for certain tasks above his pay grade; it did not relate to a disability, and is not protected by the Rehabilitation Act.[22]

### 2. Removal from Light Duty

Lyons argues that his removal from the HEU light duty assignment was retaliation for his EEOC complaint and his requests for accommodations. Pl.'s Opp'n 31-32. However, there is no evidence that Greenawalt, the workers' compensation manager undisputedly in charge of Lyons's light duty placements, knew that he had filed a complaint or requested accommodations. Lyons offers only his uncorroborated belief that Diggs was influencing Greenawalt; those beliefs do not create a genuine

---

[21] "The standard for retaliation claims under the Rehabilitation Act is the same as the standard for retaliation claims under the Americans with Disabilities Act." *Reinhardt,* 595 F.3d at 1132.

[22] *Cf. Schmidt v. Solis,* 2011 WL 703623, at *4 (D.D.C. Mar. 1, 2011)(union grievance "which alleged discrimination" was protected activity); *Mosley v. Potter,* 2007 WL 1100470, at *9 (S.D. Tex. April 11, 2007) (pursuing a claim for benefits under the Federal Employee's Compensation Act was not Rehabilitation Act protected activity).

dispute about whether her decision was retaliatory.[23]   The
undisputed evidence is that Greenawalt removed Lyons because she
could "only place people in light duty if they ha[d] an approved
ongoing [workers' compensation] claim," and Lyons "never
appealed" the termination of his claim.  Greenawalt Dep. 51 &
81.

### 3.    Termination from the VA

It is undisputed that Diggs proposed Lyons's termination,
and was aware of Lyons's EEOC complaint.  Diggs Dep. 28:1,
218:6-7.  Lyons's evidence that would allow a reasonable jury to
conclude that Diggs proposed his termination because of the
complaint would defeat summary judgment.  *See Dowe,* 145 F.3d at
656.

"[E]vidence that the alleged adverse action occurred
*shortly* after the employer became aware of the protected
activity is sufficient to satisf[y] . . . a *prima facie* case of
causa[tion]."  *Id.* at 657 (emphasis in original)(internal
quotation marks omitted).  But, "[a] lengthy time lapse between
the employer becoming aware of the protected activity and the
alleged adverse employment action . . . negates any inference
that a causal connection exists between the two."  *Id.*  Here,

---

[23]  *See Wallace v. Bd. of Educ.,* 2009 WL 321568, at *5 (D. Md.
Feb. 2, 2009) (plaintiff failed to show *prima facie* case for
retaliation when "the human resources employee in charge of
selecting applications . . . for the position denied even
knowing [the plaintiff] or that he had filed a discrimination
charge when she reviewed his application").

Lyons filed the EEOC complaint in 2004 and it was resolved in the VA's favor on August 26, 2005; Diggs did not propose Lyons's termination until May 5, 2006. Def.'s Mot. Summ. J, Exs. 3 & 5. Lyons has produced no evidence of a causal connection between the EEOC complaint and his termination. Thus, the time lapse between the two precludes "any inference [of] a . . . connection." *Dowe,* 145. F3d at 653. [24]

Further, although Diggs acknowledges that in 2003, Lyons said he had a disability, that was also several years before his termination. Diggs Dep. 146:21-147:9. And, Lyons has produced no evidence that Diggs knew he had sought a reasonable accommodation then, or thereafter. Lyons has not shown a *prima facie* case of retaliation, and the Defendant will be granted summary judgment on that claim.

E.   Hostile Work Environment Claim

A federal employee may bring a claim for hostile work environment under the Rehabilitation Act. *See Pueschel v. Peters,* 577 F.3d 558 (4th Cir. 2009). Such claims "protect[] against . . . harassment so severe as to create a hostile work

---

[24] *Dowe,* 145 F.3d at 657 (employee failed to produce sufficient evidence to establish nexus between EEOC complaint and termination when three years elapsed between the events); *Hooven-Lewis v. Caldera,* 249 F.3d 259, 278 (4th Cir. 2001)("A six month lag is sufficient to negate any inference of causation"); *Moret v. Green,* 494 F. Supp. 2d 329, 344 (D. Md. 2007)(eight month period "insufficient to create a causal link" between plaintiff's complaint and employer's non-renewal of her contract).

environment, even absent a tangible adverse action against the employee." *Reed v. Airtran Airways,* 531 F. Supp. 2d 660, 668 (D. Md. 2008) (*citing Rogers v. EEOC,* 454 F.2d 234 (5th Cir. 1971)). To prevail on his hostile work environment claim, Lyons must demonstrate that: (1) he was subjected to unwelcome harassment, which was (2) based on his disability or perceived disability, (3) and was sufficiently severe or pervasive to alter a term, condition, or privilege of employment, and (4) there is some factual basis to impute liability for the harassment to the employer. *Fox v. Gen. Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2001).

The Defendant argues that Lyons's claim fails because he has presented no evidence that his workplace was objectively hostile. Def.'s Mot. Summ. J. 11-12. Lyons contends that a reasonable fact finder could find the "environment possessed discriminatory intimidation, ridicule, and insult" because he was not given accommodations, was transferred in retaliation to Loch Raven, and was "stripped of his light duty assignments, without any independent medical examination on the Agency's part, when he received an unfavorable OWCP ruling." Pl.'s Opp'n 34.

"[T]he standard for proving [a hostile] work environment is intended to be a high one," and the conduct must be "extreme." *Karim v. Staples, Inc.,* 210 F. Supp. 2d 737, 752 (D. Md. 2002) (citations omitted). Lyons must demonstrate not only that he

subjectively perceived the workplace as hostile, "but also that a reasonable person would so perceive it, i.e. that it was objectively hostile." *Fox,* 247 F.3d at 178.[25]

Lyons's hostile work environment claim fails because he has not shown a genuine dispute whether he was disabled or regarded as such, and because he has presented no evidence of harassment. Lyons has not shown that any of his supervisors or fellow employees insulted or ridiculed him. He admits that Diggs praised his good work, Lyons Dep. 114:7-22, and contends that various other supervisors and co-workers commended his performance, before and after his injury, Pl.'s Opp'n 6 & 8. Further, the undisputed evidence is that his removal from light duty after termination of the workers' compensation claim was standard VA policy. Greenawalt Dep. 51 & 81. No reasonable jury could find that Lyons's employment atmosphere was "abusive" and "pervaded with discriminatory conduct." *Sunbelt Rentals,*

---

[25] "Although there is no precise test for a sufficiently hostile work environment, [courts] evaluate[] the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work." *Purnell v. Maryland,* 330 F. Supp. 2d 552, 561-62 (D. Md. 2004) (internal quotation marks omitted). "The task on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to [create an] environment pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimate, thereby creating an abusive atmosphere." *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 316 (4th Cir. 2008) (internal quotation marks omitted).

521 F.3d at 316.  The Defendant will be granted summary judgment on Lyons's hostile work environment claim.

III.    Conclusion

        For the reasons stated above, the Defendant's motion for summary judgment will be granted.


May 11, 2011                         _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge